**Daniel Snyder, OSB No. 783856**
dansnyder@lawofficeofdanielsnyder.com
**Carl Post, OSB No. 061058**
carlpost@lawofficeofdanielsnyder.com
**John Burgess, OSB No. 106498**
johnburgess@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249

Of Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **FALLON HUGHES,** | Case No. 3:21-cv-991 |
| **PLAINTIFF**, | **COMPLAINT** |
| | UNLAWFUL EMPLOYMENT ACTION |
| v. | Title VII Discrimination and retaliation; and supplemental state law claims |
| **PACIFIC UNIVERSITY,** | |
| **DEFENDANT**. | **JURY TRIAL DEMANDED** |

## I. PRELIMINARY STATEMENT

1.      Plaintiff Fallon Hughes brings this action to remedy violations of Plaintiff's statutory rights under Title VII Civil Rights Act of 1964. Plaintiff seeks equitable relief, including economic and noneconomic damages, as well as attorneys' fees and costs.

PAGE 1 – COMPLAINT AND DEMAND FOR JURY TRIAL

## II. JURISDICTION

2.      Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, federal question jurisdiction, and 28 U.S.C. §1343, civil rights jurisdiction.

3.      Plaintiff requests this Court invoke its supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with respect to all causes of action based on Oregon statutory provisions or on the common law as the Oregon claims arise from the same nucleus of operative facts as the federal claims.

4.      All preconditions to jurisdiction pursuant to 42 U.S.C. § 2000e-5 have been satisfied.

      a.      On or about July 13, 2020, Plaintiff filed an administrative complaint for employment discrimination and retaliation with the Oregon Bureau of Labor and Industries Civil Rights Division ("BOLI CRD"), Case No. EEEMSX200713-10934.

      b.      BOLI CRD co-filed its charge of employment discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 38D-2020-00757C.

      c.      On or about June 25, 2020, Plaintiff filed a complaint of discrimination with the EEOC, Charge No. 551-2020-02346, without the assistance of BOLI CRD. On or about June 22, 2021, Oregon BOLI CRD closed its file.

      d.      On April 8, 2021, the EEOC issued Plaintiff a Dismissal and Notice of Rights for Charge No. 551-2020-02346. The EEOC issued the Dismissal and Notice of Rights without investigating the charge and without making any findings as to the merits of the charge.

PAGE 2 – COMPLAINT AND DEMAND FOR JURY TRIAL

e.      On or about June 22, 2021, BOLI closed its file at Plaintiff's request as it had not completed an investigation and the EEOC had already issued a Notice of Rights to sue.

5.      Concerning the pendent claims, if the expiration of the time to commence an action or give notice of a claim falls within the time in which any declaration of a state of emergency issued by the Governor related to COVID-19, and any extension of the declaration, is in effect, or within 90 days after the declaration and any extension is no longer in effect, the expiration of the time to commence the action or give notice of the claim is extended to a date 90 days after the declaration and any extension is no longer in effect.

6.      Venue is in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because the claim arose in this Judicial District. Venue is appropriate in the Portland Division.

### III. <u>PARTIES</u>

7.      Plaintiff, Fallon Hughes, is a citizen of the United States. At all times material, Plaintiff worked for Defendant in Washington County, Oregon.

8.      Defendant Pacific University, is an Oregon public benefit corporation, registered to do business in Oregon. Defendant does regular and sustained business in Oregon, including Washington County, Oregon. Defendant has an office in Forest Grove, Oregon.

9.      At all times relevant, Defendant's officers, employees, and supervisors as their conduct is alleged herein were acting within the course and scope of their employment with the Defendant.

### IV. <u>GENERAL FACTUAL ALLEGATIONS</u>

PAGE 3 – COMPLAINT AND DEMAND FOR JURY TRIAL

10.    On July 9, 2018, Plaintiff began working for Defendant as the Coordinator for Experiential Compliance at the Pacific University School of Pharmacy. Plaintiff's direct supervisor was Anita Cleven, PharmD RPh, the Assistant Dean for Experiential Education. Dr. Cleven's supervisor was Reza Karimi, PhD, RPh, the Dean of the School of Pharmacy.

11.    On August 15, 2018, Assistant Professor of Pharmaceutical Science Nicola Carter, PhD announced during the staff meeting that she had been charged with running a staff survey. Several of Defendant's female employees, Rita Barton, Catherine Marlow, and Sandy Hess, said that they were uncomfortable with the idea of a staff survey because the previous two staff surveys or focus groups had not resulted in positive change. Other female employees, Melanie Belles, Beth Ross, Rita Barton, and Sandy Hess, and one male employee, Alex Nguyen, said that they were concerned about the anonymity of the survey due to previous experiences of retaliation. Every committee member agreed that the survey would be completed by Plaintiff as the staff representative to the Assessment Committee; that no one would be provided with originals or access to the raw data used in generating the report; that no information about the process would be provided without group approval; that no individual would be named from the staff within the report; and that Plaintiff would provide the group with a rough draft of the report and then edit as requested until a final draft could be agreed upon.

12.    On August 21, 2018, at the Assessment Committee meeting, Plaintiff updated the committee regarding the process of the survey and report.

13.    Each staff member in the School of Pharmacy received $2,000 for personal development per academic year. During August 2018, Plaintiff requested that she be permitted to use her personal development funds to complete a university course at Portland State University

PAGE 4 – COMPLAINT AND DEMAND FOR JURY TRIAL

on strategic communication. Plaintiff's request to take the university course was denied by Dr. Anita Cleven who said that she felt it would be too much to add on to Plaintiff's plate since Plaintiff was planning a wedding. Plaintiff called Michelle Quint, Assistant Director of Human Resources to lodge a complaint of sexism since Dr. Cleven's reason, that Plaintiff was planning a wedding, was irrelevant to Plaintiff's work and development.

14.    Throughout September 2018, Plaintiff and another employee wrote open ended survey questions which they sent out to employees in the department by email. Employee responses included allegations of sexism and racism. Employees also reported illegal employment practices, such as not getting lunch or rest breaks.

15.    Before sending out the survey, Plaintiff had been allowed to occasionally telework. After the survey went out, Dr. Cleven announced a policy change, stating that only one of the coordinators could be out of the office for the day and that this would affect vacation and work-at-home privileges. This affected only two female employees, Plaintiff and Melanie Belles. A male comparator, Jackson Ross, was not subject to the telework restrictions. Plaintiff then contacted Jennifer Yreugas, Associate Dean of Defendant's College of Business, General Counsel, and Associate Vice President of Human Resources, to complain about sexism regarding how rules were applied differently based on sex.

16.    In October and November 2018, Plaintiff began holding "Focus Group" sessions. Throughout December 2018 and January 2019, Plaintiff worked with staff to create a document that would be delivered to the Assessment Committee. There were repeated requests from various staff members for the tone to be modified so that the Dean would be receptive to hearing the message.

PAGE 5 – COMPLAINT AND DEMAND FOR JURY TRIAL

17.     On February 15, 2019, the draft of the Staff Feedback document was completed and submitted to the Assessment Committee who discussed the document at the February meeting. A sub-committee was formed to write an "executive summary" that would be more consistent with the format of previous reports sent to the Executive Committee. During this meeting, it was discussed that Dr. Karimi had forgotten that he had charged the Assessment Committee with completing a staff survey. Dr. Karimi was claiming that staff had done it "behind his back." Dr. Carter said that she attended a meeting in which Dr. Karimi berated her for hiding the survey from him. Dr. Carter explained that Dr. Karimi would receive the information when the Assessment Committee had completed their review. Dr. Karimi repeatedly requested access to the raw data.

18.     In March 2019, the Assessment Committee subcommittee agreed that the tone needed to focus on solutions and not just problems in order to be most effective. The female-led subcommittee worked to ensure that as each problem was identified that a minimum of one solution would be offered in the document.

19.     In or about March 2019, Plaintiff sent an email to Jennifer Yreugas to request an in-person meeting regarding the staff feedback. Yreugas did not respond.

20.     In April 2019, the Assessment Committee through Dr. Carter, delivered the Staff Feedback Executive Summary to the Executive Committee. During April 2019, Plaintiff sent an email to Ashly Tilden-Browning, Jennifer Yreugas's assistant, requesting an appointment with Yreugas. Ms. Tilden-Browning responded that Ms. Yreugas did not feel the need to speak with Plaintiff although she did meet with a male employee, Andrew Longhofer.

PAGE 6 – COMPLAINT AND DEMAND FOR JURY TRIAL

21.     On April 12, 2019, Dr. Cleven denied Plaintiff's request to work at home because of a meeting scheduled with Dr. Karimi.

22.     On April 22, 2019, Plaintiff attended a meeting with Dr. Karimi and Dr. Cleven. At that meeting, Dr. Karimi asked Plaintiff why she represented herself as the "staff representative" of the Assessment Committee. Plaintiff explained that she had been assigned, by him, to be the staff representative. Dr. Karimi argued that he had not. Plaintiff explained that her position as staff representative was her listed title in the Bylaws of the committee. Dr. Karimi became verbally aggressive by interrupting her and speaking over her. Dr. Karimi then brought up teleworking and said, "only good employees can work at home." Plaintiff asked why a telephone call or a Zoom meeting would be unacceptable. Dr. Karimi said that he wanted Plaintiff to get to campus within ten minutes of needing her and he did not want to talk on the telephone or via Zoom. Dr. Karimi said he did not mean all staff, just Plaintiff. Dr. Karimi said that if Plaintiff is sick, she is required to log into her email and to communicate with others as needed regarding appointments and urgent issues. Plaintiff said that she would be working and not off work for being sick. Dr. Karimi argued that this was a policy although none existed.

23.     On May 8, 2019, Dr. Karimi sent an email titled "SOPAC's staff document" to the Assessment Committee regarding his feelings about the survey.

24.      On May 24, 2019, Dr. Karimi sent an email titled "staff concerns" to the staff in which he wrote about his thoughts regarding the report and the report's discussions in the Executive Committee. He apologized for his emotional response and agreed to a June 10 meeting with Human Resources.

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

25.     On June 4, 2019, Plaintiff was called into a performance meeting with Dr. Cleven. Dr. Cleven said that the work-at-home policy was only for "successful employees." Plaintiff asked if she meant that Plaintiff is not successful. Dr. Cleven said no, she just wanted to make it clear that Plaintiff could have the privilege revoked at any time, including while actually working at home. Dr. Cleven asked whether or not Plaintiff wanted to remain on the Assessment Committee. Plaintiff said that she did because she felt the work was not complete. Dr. Cleven said that ever since Plaintiff started work on the survey, Plaintiff seemed to be negative with her, the team, and with students. Plaintiff asked for examples. Dr. Cleven said that Plaintiff's emails could be "harsh" and that she wanted people to perceive Plaintiff as being "nice." She explained that she had seen Plaintiff talking to Assistant Dean, now Associate Professor, Pauline Cawley PharmD, PGDip, RPh and that by building a relationship with Dr. Cawley, Plaintiff was undermining Dr. Cleven's relationship with Plaintiff because Plaintiff was seeking mentoring elsewhere. Dr. Cleven said that in the future Plaintiff would need her permission to speak with anyone outside of the Office of Experiential Education. Dr. Cleven scored Plaintiff an average score in the review of 4.08 out of 5 possible points in that review.

26.     Defendant's Associate Vice-President of Human Resources, Jennifer Yreugas, canceled a scheduled July 9, 2019, meeting with Plaintiff. The purpose of the meeting was to discuss issues of sexism and the survey. All department employees then attended a joint meeting with Dr. Karimi, Jennifer Yreugas, and Ann Barr-Gilespie PhD, DPT. Dr. Gilespie said that Dr. Karimi was an excellent boss and that an outside group would be hired to do some communication and mediation training for the staff so that staff could learn how to report issues such as sexism and racism when they occurred. Jennifer Yreugas explained that employees were

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

not required to participate in the training but refusing to participate in training would be noted in employee performances. Ms. Yreugas said that employees were not to "poison the well" anymore by talking to coworkers about what happened. In July 2019, Dr. Karimi removed Plaintiff from the Assessment Committee. Plaintiff asked Dr. Cleven why Plaintiff had been removed from the committee. Dr. Cleven explained that it was because Dr. Karimi assigned Plaintiff to a different committee. Plaintiff said, "but we were told that if we requested to stay on the committee that we could." Dr. Cleven said it was not up to her.

27.    On October 2, 2019, Plaintiff was unable to work due to illness and was subsequently took medical leave. On October 15, 2019, Tracy King, Human Resources benefits administrator, sent Plaintiff instructions by email to complete the paperwork needed for Plaintiff's medical leave of absence. On October 23, 2019, Plaintiff submitted the formal medical leave of absence form to Pacific University. On November 18, 2019, Plaintiff returned to work no more than four hours per day through November 29, 2019.

28.    On January 22, 2020, Plaintiff was again unable to work due to illness. Plaintiff attempted to put an out-of-office message on her email but was unable to do so. On January 28, 2020, Plaintiff saw her physician who prepared a letter authorizing Plaintiff to be off work from January 22, 2020, through January 29, 2020, due to illness. Plaintiff submitted that letter to Defendant. On January 30, 2020, Plaintiff returned to work.

29.    On February 18, 2020, Plaintiff worked with University Information Services ("UIS") for two and a half hours regarding a computer glitch that prevented her from being able to place an out-of-office message in Outlook when she was ill. University Information Services

PAGE 9 – COMPLAINT AND DEMAND FOR JURY
TRIAL

was not able to resolve the inability to place an out-of-office message on Plaintiff's email. It was

a known issue. UIS reported to Plaintiff that Dr. Karimi had experienced the same problem.

30.    On February 19, 2020, Plaintiff was called into a meeting with Associate Vice

President of Human Resources Jennifer Yreugas and the Interim Assistant Dean for Experiential

Education Maddie Fry. Jennifer Yreugas stated that Plaintiff was going to be separated from the

University due to "ongoing performance issues." Plaintiff asked what these issues were because

her last review was quite positive and no one had repeatedly brought up anything to her. Jennifer

Yreugas said that "for example, not using the out-of-office message when you were out on

leave." Plaintiff said "that's a glitch. I just met with UIS about it." Jennifer Yreugas directed

Plaintiff to sign a paper stating that she had resigned. Plaintiff signed the paperwork but wrote

that she understood she was being terminated.

## FIRST CLAIM FOR RELIEF

(Title VII Civil Rights Act of 1964)

(Gender and Sex Discrimination – 42 U.S.C. §2000e-2)

31.    Plaintiff alleges all prior relevant paragraphs as if fully set forth herein.

32.    At all material times, Defendant was an employer within the meaning of

42 U.S.C. § 2000e (b).

33.    Defendant discriminated against Plaintiff with respect to the terms and conditions

of her employment including compensation because of Plaintiff's gender and sex as alleged

above. Defendant ultimately discharged Plaintiff from employment.

34.    As a result of Defendant's unlawful employment actions, Plaintiff suffered and

continues to suffer economic and noneconomic damages in an amount to be proved at trial.

PAGE 10 – COMPLAINT AND DEMAND FOR JURY
TRIAL

35.     Plaintiff is entitled to an award for past lost wages and benefits, future lost earnings, benefits, and lost earning capacity, and other compensatory damages for future pecuniary losses. Plaintiff's economic damages are continuing in nature and are not presently known.

36.     Plaintiff is entitled to an award for non-economic damages for her emotional distress.

37.     To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

38.     Plaintiff is entitled to post-judgment interest on all damages, costs, and attorneys' fees from the date of judgment until the date paid.

39.     Pursuant to 42 U.S.C. § 2000e-5, Plaintiff is entitled to an award of attorneys' fees, expert witness fees, and costs incurred herein.

40.     Plaintiff also seeks an award for such additional relief as justice may require.

## SECOND CLAIM FOR RELIEF

### (Gender Retaliation - 42 U.S.C. § 2000e-3)

41.     Plaintiff realleges all prior relevant paragraphs as if fully set forth herein.

42.     At all material times, Defendant was an employer within the meaning of 42 U.S.C. § 2000e (b).

43.     Defendant discriminated and retaliated against Plaintiff with respect to the terms and conditions of her employment because Plaintiff opposed unlawful gender and sex discrimination.

PAGE 11 – COMPLAINT AND DEMAND FOR JURY TRIAL

44.     As a result of Defendant's unlawful employment actions, Plaintiff suffered and continues to suffer economic and noneconomic damages in an amount to be proved at trial.

45.     Plaintiff is entitled to equitable relief, including, but not limited to, an award of back pay and lost benefits. Plaintiff should be awarded past economic damages in an amount determined fair by a jury to compensate Plaintiff for lost employment opportunities, including, but not limited, promotions and raises. Plaintiff's economic damages are continuing in nature and are not presently known.

46.     Plaintiff is entitled to non-economic damages for her emotional distress.

47.     To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

48.     Plaintiff is entitled to post-judgment interest on all damages, costs, and attorneys' fees from the date of judgment until the date paid.

49.     Pursuant to 42 U.S.C. § 2000e-5, Plaintiff is entitled to an award of attorneys' fees, expert witness fees, and costs incurred herein.

50.     Plaintiff also seeks an award for such additional relief as justice may require.

### THIRD CLAIM FOR RELIEF

(Unlawful Employment Practices – ORS 659A. 030)

51.     Plaintiff realleges all prior relevant paragraphs as if fully set forth herein.

52.     Defendant discriminated against Plaintiff in the terms and conditions of her employment based on sex and gender.

PAGE 12 – COMPLAINT AND DEMAND FOR JURY TRIAL

53.     Defendant allowed a hostile work environment to exist for female employees. Plaintiff reported this to management.

54.     Defendant discharged Plaintiff from employment.

55.     As a result of Defendant's discriminatory conduct, Plaintiff is entitled to economic damages for back pay and front pay, plus prejudgment interest.

56.     As a further result of Defendant's discriminatory conduction, Plaintiff suffered from humiliation, emotional distress, and loss of enjoyment of life for which she is entitled to be compensated at an amount set by the jury.

57.     Pursuant to ORS 659A.885, Plaintiff is entitled to recover her reasonable attorneys' fees, costs, and expert fees.

### FOURTH CLAIM FOR RELIEF

(Family and Medical Leave Act of 1993 - 29 U.S.C. § 2601 et seq.)

58.     Plaintiff re-alleges all prior relevant paragraphs as if fully set forth herein.

59.     Defendant is an "employer" within the meaning of 29 U.S.C. § 2611(4).

60.     Defendant employed at least 50 employees for each working day during each of 20 or more calendar work weeks in 2018 and 2019, the years before leave was taken.

61.     At all times material, Plaintiff was an "eligible employee" within the meaning of 29 U.S.C. § 2611(2).

62.     At all times in 2019 and 2020, the years Plaintiff took medical leave, Defendant employed 50 or more employees with 75 miles of the worksite where Plaintiff performed work for Defendant.

63.     Plaintiff was employed by Defendant for at least 1,250 hours of service during the

PAGE 13 – COMPLAINT AND DEMAND FOR JURY TRIAL

12-month period immediately preceding the commencement of her leave in 2020.

64.    Plaintiff was employed by Defendant for more than 12 months prior to commencing leave in 2020.

65.    At all times material, Plaintiff was an "eligible employee" within the meaning of 29 U.S.C. § 2611(2).

66.    Plaintiff took medical leave protected by the Family Medical Leave Act ("FMLA").

67.    At all material times, Plaintiff suffered from a serious health condition, as defined by 29 U.S.C. § 2611(11).

68.    Defendant interfered with Plaintiff for engaging in the protected activity of taking leave under FMLA. Defendant interfered with Plaintiff for taking medical leave by taking adverse employment actions against Plaintiff, including, but not limited to, terminating Plaintiff's employment.

69.    As a direct and proximate result of Defendant's interference, Plaintiff has suffered lost income and will continue to suffer past and future wages, past and future benefits, and other expenses, all to Plaintiff's economic damages in an amount to be determined at trial.

70.    The Court should enter an order declaring that Defendant violated the FMLA.

71.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

72.    Plaintiff is entitled to an award of liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A).

PAGE 14 – COMPLAINT AND DEMAND FOR JURY TRIAL

73.     Pursuant to 29 U.S.C. § 2617(a)(3), Plaintiff is entitled to an award of attorneys' fees, expert fees, and costs incurred herein.

74.     Plaintiff is entitled to post-judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## FIFTH CLAIM FOR RELIEF

(Oregon Family Leave Act – ORS 659A.150 et. seq.)

75.     Plaintiff re-alleges all prior relevant paragraphs as if fully set forth herein.

76.     Plaintiff took medical leave protected by the Oregon Family Leave Act ("OFLA").

77.     Defendant employed 25 or more persons in the State of Oregon for each working day during each of 20 or more calendar workweeks in the years 2019 and 2020.

78.     Defendant employed 25 or more persons in the State of Oregon for each working day during each of 20 or more calendar workweeks in the years 2018 and 2019, the years before leave was taken.

79.     Immediately prior to commencing family leave in 2019 and 2020, Plaintiff had worked for Defendant for more than 180 days.

80.     Plaintiff worked an average of more than 25 hours per week for Defendant during the 180 days immediately preceding the dates on which Plaintiff commenced family leave.

81.     At all material times, Plaintiff had a serious health condition as that term is defined in ORS 659A.150(6).

82.     Defendant interfered, discriminated, and retaliated against Plaintiff for taking medical leave by taking adverse employment actions against Plaintiff, including, but not limited

PAGE 15 – COMPLAINT AND DEMAND FOR JURY TRIAL

to, terminating Plaintiff's employment.

83.    As a result of Defendant's interference, discrimination, and retaliation against Plaintiff, Plaintiff suffered and continues to suffer economic losses.

84.    As a result of Defendant's discrimination and retaliation against Plaintiff, Plaintiff is entitled to equitable relief.

85.    Pursuant to 659A.885, Plaintiff is entitled to recover back pay.

86.    The court should enter an order declaring that Defendant violated the OFLA.

87.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

88.    Pursuant to ORS 659A.885(1) and ORS 20.107, Plaintiff is entitled to recover Plaintiff's reasonable attorneys' fees and costs, including expert witness fees.

89.    Plaintiff is entitled to post-judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## SIXTH CLAIM FOR RELIEF

(Unlawful Employment Practices – ORS 659A.199 – Whistleblower)

90.    Plaintiff re-alleges all relevant paragraphs above as though fully restated herein.

91.    Plaintiff reported to Defendant conduct that Plaintiff believed was evidence of a violation of state or federal law, rule, or regulation. This conduct included reports of sex and gender discrimination and harassment.

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

92.    Defendant discriminated and retaliated against Plaintiff because of the report made by Plaintiff. Defendant's actions violated ORS 659A.199, are an unlawful employment practice, and caused Plaintiff economic and noneconomic damages.

93.    As a result, Plaintiff suffered damage and is entitled to the damages and other relief set forth below.

94.    Plaintiff is entitled to equitable relief, including but not limited to, a declaration that Defendant violated Plaintiff's statutory rights under ORS 659A.199, reinstatement, and an injunction prohibiting further discrimination and retaliation.

95.    If reinstatement is not appropriate, then Plaintiff is entitled to an award for past lost wages and benefits and future lost earnings, benefits, and lost earning capacity, and other compensatory damages for future pecuniary losses. Plaintiff should be awarded economic damages in an amount determined fair by a jury.

96.    Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses in an amount to be proved at trial. Plaintiff should be awarded non-economic damages in an amount determined fair by a jury.

97.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

98.    Pursuant to ORS Chapter 659A.885 and ORS 20.107, the Plaintiff is entitled to recover her reasonable attorneys' fees and costs, including expert witness fees.

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

99.    Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## SEVENTH CLAIM FOR RELIEF

### (Wrongful Termination)

100.    Plaintiff realleges all relevant paragraphs.

101.    Defendant's conduct, as alleged, was in retaliation for Plaintiff's assertion of claims under FMLA and OFLA and Plaintiff's whistleblowing, and as such constitutes a wrongful discharge under state common law.

102.    Plaintiff's remedies under state and federal statutory law does not constitute a complete remedy for the damage Defendant has inflicted.

103.    As a result, Plaintiff suffered damage and is entitled to the damages and other relief set forth below.

104.    Plaintiff is entitled to equitable relief, including but not limited to, a declaration that Defendant violated Plaintiff's statutory rights, reinstatement, and an injunction prohibiting further discrimination and retaliation.

105.    Plaintiff is entitled to an award for past lost wages and benefits and future lost earnings, benefits, and lost earning capacity, and other compensatory damages for past and future pecuniary losses. Plaintiff should be awarded economic damages in an amount determined fair by a jury.

106.    Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional distress and other nonpecuniary losses in an amount to be proved at trial. Plaintiff should be awarded non-economic damages in an amount determined fair by a jury.

PAGE 18 – COMPLAINT AND DEMAND FOR JURY TRIAL

107.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

108.    Pursuant to ORS 20.107, Plaintiff is entitled to an award of attorneys' fees and expert witness fees.

109.    Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of Judgment. Until the judgment is paid.

## EIGHTH CLAIM FOR RELIEF

### (Oregon Sick Leave - ORS 653.641)

110.    Plaintiff realleges all relevant paragraphs.

111.    Plaintiff sought to take sick leave protected by ORS 653.641.

112.    Defendant employed 10 or more persons in the State of Oregon.

113.    Prior to taking leave Plaintiff was employed by Defendant for more than 90 days.

114.    Plaintiff sought sick leave to care for herself.

115.    Defendant interfered, discriminated and retaliated against Plaintiff for taking leave by taking adverse employment actions against Plaintiff, including, but not limited to, terminating their employment.

116.    As a result of Defendant's interference, discrimination and retaliation against them, Plaintiff suffered and continues to suffer economic losses.

117.    As a result of Defendant's discrimination and retaliation against them, Plaintiff is entitled to equitable relief.

118.    Pursuant to ORS 659A.885, Plaintiff is entitled to recover back pay.

PAGE 19 – COMPLAINT AND DEMAND FOR JURY TRIAL

119.    The court should enter an order declaring that Defendant violated ORS 653.641.

120.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

121.    Pursuant to ORS 659A.885(1) and ORS 20.107, Plaintiff is entitled to recover Carter's reasonable attorneys' fees and costs, including expert witness fees.

122.    Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date judgment is paid.

### PRAYER FOR RELIEF

Plaintiff prays for the following judgment against Defendant:

1.    A sum which will fully compensate Plaintiff for Plaintiff's non-economic damages in a sum that is just as determined by a jury;

2.    A sum which will fully compensate Plaintiff for Plaintiff's economic damages in a sum that is just as determined by a jury;

3.    Equitable relief, including but not limited to, reinstatement if Plaintiff so chooses;

4.    Liquidated damages;

5.    Plaintiff's costs and disbursements incurred herein;

6.    Plaintiff's attorneys' fees; and

7.    For such other and further relief as the Court may deem just and equitable.

**Plaintiff demands a trial by Jury.**

Dated: July 2, 2021

**Law Offices of Daniel Snyder**

PAGE 20 – COMPLAINT AND DEMAND FOR JURY TRIAL

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

*/s/ Daniel Snyder*
Daniel Snyder, OSB No. 783856
dansnyder@lawofficeofdanielsnyder.com
Carl Post, OSB No. 06105
carlpost@lawofficeofdanielsnyder.com
John David Burgess, OSB 106498
johnburgess@lawofficeofdanielsnyder.com
Tel : (503) 241-3617 / Fax : (503) 241-2249

Of Attorneys for Plaintiff

PAGE 21 – COMPLAINT AND DEMAND FOR JURY
TRIAL